UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY CUTLER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, *et al.*<br><br>Defendants. | Civil Action No. 13-2066 (CKK) |

**MEMORANDUM OPINION**
(June 25, 2014)

Plaintiff Jeffrey Cutler brings this action against Defendants the United States Department of Health and Human Services, Sylvia Matthews Burwell, in her official capacity as Secretary of Health and Human Services,[1] United States Department of Treasury, and Jacob Lew, in his official capacity as Secretary of the Treasury (collectively "Defendants"), asserting claims that Congress exceeded its authority under the Commerce Clause when enacting the Patient Protection and Affordable Care Act ("Affordable Care Act" or "the Act"), that the Act violates the First Amendment, and that the Act has been impermissibly altered since its enactment. Currently before the Court is Defendants' [9] Motion to Dismiss, Plaintiff's [12] Motion for Partial Summary Judgment, and Plaintiff's [18] Renewed Motion for Partial Summary Judgment. Upon consideration of the pleadings,[2] the relevant legal authorities, and the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Sylvia Matthews Burwell has been automatically substituted for Kathleen Sebelius, whom the parties' pleadings name as Defendant.

[2] Compl., ECF No. [1]; Defs.' Mot. to Dismiss, ECF No. [9] ("Defs.' MTD"); Pl.'s Mot. for Part. Summ. J., ECF No. [12] ("Pl's MPSJ"); Pl.'s Resp. for Mot. to Dismiss, ECF. No. [14] ("Pl.'s Resp."); Defs.' Reply Br., ECF No. [15] ("Defs.' Reply Br."); Pl.'s Resp. to Br., ECF No.

record as a whole, the Court GRANTS Defendants' [9] Motion to Dismiss. Given its ruling on the Motion to Dismiss, the Court DENIES Plaintiff's [12] Motion for Partial Summary Judgment and DENIES Plaintiff's [18] Renewed Motion for Partial Summary Judgment.

## I. BACKGROUND

### A. Statutory Background

In 2010, Congress enacted the Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010). Compl. ¶ 1. The purpose of the Act was to "increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, --- U.S. ---, ---, 132 S. Ct. 2566, 2580 (2012). A portion of the Act, commonly known as the "individual mandate," requires all nonexempt United States citizens to either obtain "minimal essential" health insurance coverage as defined in the Act or pay a penalty. Compl. ¶ 1; *see also* 26 U.S.C. § 5000A (2010). The Act provides certain exemptions to the individual mandate, including one for persons certified as members of an exempt religion or sect, and for members of a health care sharing ministry. Compl. ¶ 1; *see also* 26 U.S.C. § 5000A(d)(2) (2010).

### B. Factual Background

The following facts are taken from the Plaintiff's Complaint and must be accepted as true for purposes of a motion to dismiss. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Plaintiff is a citizen of the United States and a permanent resident of the Commonwealth of Pennsylvania. Compl. ¶ 5. In November 2013, Plaintiff won a municipal election in East Lampeter Township, Pennsylvania, and will serve a 4-year term as a result. *Id.* Plaintiff is "lawfully bound to uphold the laws of Pennsylvania, and the United States Government." *Id.* Plaintiff's annual income is such that he is required to file federal tax returns.

---

[17] ("Pl.'s Resp. to Br."); Pl.'s Renewed Mot. for Part. Summ. J., ECF No. [18] ("Pl.'s Renewed MPSJ").

*Id.* Plaintiff is subject to the individual mandate of the Act and cannot claim any exemptions. *Id.* ¶ 15. Specifically, Plaintiff is non-observant in his religion and cannot claim a religious exemption from the individual mandate pursuant to 26 U.S.C. § 5000A(d)(2). *Id.* ¶ 5.

Plaintiff's health insurance was canceled "due to the changes specified by regulations that altered the law as approved." *Id.* ¶ 24. Plaintiff currently is not covered under a plan that meets the requirements of minimal essential coverage. *Id.* ¶ 15. Plaintiff can afford health insurance however, Plaintiff does not "wish[] to be mandated to be covered." *Id.* ¶¶ 5, 15. On January 1, 2014 or at "some other date as altered by decree," Plaintiff will incur penalties for failing to maintain minimum essential coverage. *Id.* ¶ 16.

### C. Procedural History

On December 31, 2013, Plaintiff filed suit against Defendants in this Court. Plaintiff argues that the individual mandate of the Affordable Care Act is unconstitutional on its face and as applied to him and his constituents. Plaintiff asserts three specific claims in his Complaint: (1) Congress does not have the authority to enact the individual mandate or provide the religious exemption under its Commerce Clause powers, Compl. ¶¶ 30-33; (2) the religious exemption to the individual mandate violates the First Amendment by favoring one religion over another and allowing the government to certify who qualifies for the exemption based on religion, Compl. ¶¶ 1, 30, 32, 33; and (3) alterations to the Act since its passage violate 42 U.S.C. § 18112, Compl. at 11.

Accordingly, Plaintiff requests that the Court issue a declaratory judgment that the individual mandate of the Affordable Care Act exceeds Congress' authority under the Commerce Clause, Art. I, § 8, cl. 3. Compl. at 10-11. Plaintiff also requests a declaratory judgment that the entirety of the Affordable Care Act is invalid because the individual mandate is an integral

component of the Act. *Id.* 11. Plaintiff also seeks a permanent injunction enjoining Defendants and their agents, representatives and employees from giving effect to the Affordable Care Act, because the government's alterations to the law violate 14 U.S.C. § 18112. *Id.*

In response to this Complaint, Defendants filed their [9] Motion to Dismiss, contending that Plaintiff lacks Article III standing to bring this Complaint and contending that Plaintiff failed to state a viable Establishment Clause claim.

In addition to the Complaint, Plaintiff filed his [12] Motion for Partial Summary Judgment, requesting that the Court enter a permanent injunction enjoining Defendants from enforcing the Affordable Care Act, and delay all parts of the Act that have an effective date of January 1, 2014, or later, because the Act violates the Equal Protection Clause.[3] Plaintiff also filed a [18] Renewed Motion for Partial Summary Judgment with his response to Defendants' Motion to Dismiss.

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(1)

To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or

---

[3] Plaintiff alleges that he brings this claim under the Fourteenth Amendment. Pl's MPSJ at 2. However, since Plaintiff sues only federal and not state actors in their official capacities, it is clear that he brings no valid claims pursuant to the Fourteenth Amendment of the United States Constitution: "No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV (emphasis added). This Court shall treat this as a claim brought under the Fifth Amendment. *See Klayman v. Zuckerberg*, Civ. No. 13-7017, 2014 WL 2619847, at *2 (D.C. Cir. June 13, 2014) ("Normally we afford a liberal reading to a complaint filed by a *pro se* plaintiff.").

4

the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

### B. Motion to Dismiss under Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). Further, the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). "This includes documents . . . that are referred to in the complaint and [] central to the plaintiff's claim." *Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 144 (D.D.C. 2012) (internal alteration and citation omitted).

### III. DISCUSSION

#### A. Article III Standing

"To satisfy the requirements of Article III standing in a case challenging government action, a party must allege an injury in fact that is fairly traceable to the challenged government action, and 'it must be likely, as opposed to merely speculative, that the injury will be 'redressed by a favorable decision.'" *National Wrestling Coaches Ass'n. v. Dep't of Educ.*, 366 F.3d 930, 937 (D.C. Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted)). It is axiomatic that the "party invoking federal jurisdiction bears the burden of establishing these elements" of constitutional standing. *Lujan*, 504 U.S. at 561. As the Supreme Court has explained:

> We have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional. The question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable

6

> issue, is made to rest upon such an act. . . . The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.

*Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 599 (2007) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

Here, Plaintiff seeks to bring his complaint on his own behalf as well as on behalf of his constituents in his capacity as a recently elected official in his municipality. Compl. ¶ 1. The Court shall separately address Plaintiff's standing to bring the claim as an elected official and as an individual. For the reasons described herein, the Court concludes that Plaintiff does not have standing to bring this suit in either capacity.

### a. Standing as an Elected Official

Plaintiff makes two arguments to support his claim for standing as an elected official. First, Plaintiff seeks to bring his Complaint on behalf of his constituents in his role as their representative. Compl. ¶ 1. Plaintiff also seeks to bring this challenge in his capacity as an elected official based on the notion that the Act will harm his reputation among his constituents. Compl. ¶ 26.

A narrow avenue for standing has been recognized when a legislator seeks to challenge a Congressional act on the basis that the act has diminished his power in his capacity as an elected official. *See Raines v. Byrd*, 521 U.S. 811 (1997); *Coleman v. Miller*, 307 U.S. 433 (1939). In *Coleman v. Miller*, the Court held that state legislators who voted against the ratification of an amendment to the United States Constitution had standing to challenge the ratification of the amendment after the state's Lieutenant Governor cast the deciding vote. 307 U.S. at 438. The Court later clarified that its holding in *Coleman* stands "for the proposition that legislators whose

votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823. In *Raines v. Byrd*, the Court emphasized that, in actions brought by legislators, "plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Id.* at 819 (holding that members of Congress did not have standing to challenge the Line Item Veto Act passed by Congress that gave the President power to cancel items in any bill). Accordingly, congressional standing may be appropriate in the very limited situation where an elected official has no legislative remedy to correct an alleged injury to his own power as a legislator. *Campbell v. Clinton*, 203 F.3d 19, 22-23 (D.C. Cir. 2000), *cert. denied*, 531 U.S. 815 (2000) (holding that U.S. Congressmen did not have standing to obtain a declaratory judgment that the President's use of forces in Yugoslavia violated the War Powers Clause and the War Powers Resolution because the legislators had other remedies available, including passing a law to forbid the objected-to use of forces); *see Kucinich v. Obama*, 821 F. Supp. 2d 110, 120 (D.D.C. 2011) (noting that "nullification" of votes, and not general, institutional injury, is required to establish injury sufficient to find legislator standing).

Other courts have declined to carve out an exception to *Raines* to extend standing to elected officials who seek to bring claims in their representational capacity as trustees of their constituents, rather than in their legislative capacity. *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1128 (N.D. Cal. 2007) (holding that *Raines* barred a U.S. Senator and a U.S. Representative from establishing standing in their representational capacity to intervene in a case involving a claim brought by three environmental groups alleging that certain officials failed to comply with provisions of the Global Change Research Act); *Kuchinich v. Def. Fin. &*

*Accounting Serv.*, 183 F. Supp. 2d 1005, 1010 (N.D. Ohio 2002) (holding that a U.S. Representative did not have standing in his representational capacity to bring a claim that the Department of Defense violated a federal law and the U.S. Constitution by awarding a particular contract to a private group). Courts have found that a legislator seeking to bring claims on behalf of his constituents based solely on the fact that he is an elected official fails to meet the requirement that the party has a personal stake in the alleged dispute. *Ctr. for Biological Diversity*, 571 F. Supp. 2d at 1128; *Kuchinich*, 183 F. Supp. 2d at 1009-10.

Here, Plaintiff is unable to, and does not, claim that there is an injury to his legislative power as an elected official within the holding of *Coleman*. The Affordable Care Act was enacted by Congress in 2010. Compl. ¶ 1. Plaintiff was not elected as an official in his municipality until 2013, three years after the Act was passed, and never had the authority to vote on the Act in the first place because he is a local official, not a member of Congress. Plaintiff attempts to bring this Complaint on behalf of his constituents in his representational capacity as an elected official bound by oath to uphold the law. *Id.* Plaintiff's claim for establishing standing on behalf of his constituents appears to be that his constituents will be subject to the individual mandate. In this regard, Plaintiff has failed to establish an alleged injury particularized to him or his constituents, but instead asserts that a generalized injury is shared equally by all citizens. Plaintiff, his constituents, and all nonexempt citizens are subject to the individual mandate. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("When the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Accordingly, Plaintiff has failed to allege any injury that is particularized as to him as an elected official in his representational capacity.

Plaintiff further asserts that he is injured by the individual mandate because he fears that his "personal and professional reputation will be tarnished due to the penalties his constituents will face if they fail to purchase government-mandated health insurance." Compl. ¶ 26. To satisfy his burden, Plaintiff cannot rest on "mere allegations" and must set forth specific facts. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012). The Court is not persuaded by the speculative statement that his personal and professional reputation will be harmed. Plaintiff sets forth no specific facts indicating that he has suffered any sort of reputational injury due to the passage of the Act and only appears to assert that he may suffer some sort of reputational injury at some point in the future. *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (noting that the alleged injury must be concrete in the "qualitative and temporal sense"). Plaintiff has failed to establish that such a loss to his reputation is actual or imminent, as opposed to conjectural or hypothetical. Accordingly, the Court finds that Plaintiff has failed to establish standing to raise his claims in his capacity as an elected official because he has failed to establish an injury-in-fact.

### b. Standing as an Individual

The Court now turns to the issue of whether Plaintiff has standing to bring this claim on his own behalf. *See, e.g.*, *Mendoza v. Perez*, Civ. No. 13-5118, 2014 WL 2619844, at *3 (D.C. Cir. June 13, 2014) ("To establish jurisdiction, the court need only find one plaintiff who has standing."). Plaintiff's alleged injuries as a citizen can be broken down into two separate assertions. First, Plaintiff is subject to the individual mandate and must either acquire health insurance or pay the penalty for failing to acquire health insurance. Compl. ¶¶ 15-16. Plaintiff describes this injury as "depriv[ation] . . . of personal property (i.e., personal funds) . . . and of

the liberty to remain a nonparticipant in the health insurance market in violation of the Constitution." Compl. ¶ 27. Second, Plaintiff claims that the religious exemption to the individual mandate violates the First Amendment by allowing the government to "regulate and track a person's religion, and . . . to favor one religion over another." Compl. ¶ 1. Plaintiff further asserts that "[e]mpowering the Internal Revenue Service to be the judge of how religious someone is by 'CERTIFYING' they are the correct religion or sect, damages everyone." Pl.'s Resp. at 3. Defendants allege that Plaintiff fails to meet all three elements required for Article III standing, namely injury, causation, and redressability, in order bring the claim on his own behalf. Defs.' MTD at 7-9. In challenging Plaintiff's standing to bring the instant action, Defendants claim that Plaintiff has not established that he is injured in any way, only that he has a generalized grievance that he does not want to be subject to the individual mandate. *Id.* at 7-9. Further, Defendants assert that Plaintiff's alleged injury cannot be traced to the religious exemption nor redressed by a favorable decision in the instant action. Defendants argue that even if the religious exemption was declared invalid, Plaintiff would still be required to either obtain minimum essential coverage or pay the tax penalty. *Id.* at 9-10. Finally, while Plaintiff also appears to claim that the amendments to the Act since its passage violate 42 U.S.C. § 18112, and that the Act violates the Equal Protection Clause of the Fifth Amendment, Plaintiff makes no claim as to how he is injured by either of these alleged violations.[4] Accordingly, the Court shall address only the injuries cited by Plaintiff.

---

[4] To the extent that Plaintiff appears to take issue with subsequent amendments to the Act after its passage, Plaintiff has not presented any assertions as to how he is harmed by the amendments to the Act or how the amendments violate the law. *See* Pl.'s MPSJ at 2. Similarly, Plaintiff has made no claim as to how he is injured by the alleged fact that the Act will be enforced differently in different states. *See id.* Accordingly, the Court finds that Plaintiff has failed to meet his burden of establishing standing for these claims.

The Court first turns to the alleged injury that Plaintiff incurs as a citizen subject to the individual mandate: he must either obtain health insurance or pay the penalty. An injury-in-fact must be: (1) concrete; (2) particularized; and (3) actual and imminent. *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, Plaintiff currently is not covered by a plan that meets the minimum requirements of the Act and does not want to obtain a plan. As a result, Plaintiff will be subject to a penalty. "[Plaintiff] must be able to show . . . that he has sustained . . . some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006) (quoting *Doremus v. Bd. of Educ.*, 342 U.S. 429, 434 (1952)). Plaintiff in the instant action only establishes that he is subject to the individual mandate along with all other nonexempt individuals; he has claimed no actual injury that is personalized to him. Plaintiff does not allege that he personally is subject to an economic or other hardship as a result of the individual mandate. Rather, Plaintiff acknowledges that he is financially stable and can afford health insurance coverage if he decided to obtain it. He simply would prefer not to obtain coverage or pay the penalty. Compl. ¶ 5. Defendants argue that this complained injury is "one that applies equally to every citizen, and thus is a generalized grievance insufficient to confer standing . . . ." Defs.' MTD at 6. The Court agrees. Plaintiff's claimed injury, "depriv[ation] . . . of personal property (i.e., personal funds) . . . and of the liberty to remain a nonparticipant in the health insurance market in violation of the Constitution," only establishes that Plaintiff is in the same position as all other nonexempt persons subject to the individual mandate. Compl. ¶ 27.

Another court in this district addressed the same question of standing in *Association of American Physicians & Surgeons v. Sebelius*, 901 F. Supp. 2d 19 (D.D.C. 2012), *aff'd*, 746 F.3d

468 (D.C. Cir. 2014). The court held that two associations had standing to challenge the individual mandate of the Act after members of the association provided declarations indicating that they were subject to the individual mandate and were "harmed financially" as a result. *Id.* at 36. However, the court declined to find that the plaintiffs established injury through a declaration asserting that members opposed the individual mandate but not citing any economic harms as a basis for the general opposition. *Id.* at 35-36. As the court noted, "[g]eneral opposition to a government action is not sufficient injury in fact to confer standing." *Id.* at 36 n.4. Similarly, here, the Court finds that Plaintiff's claimed injury, a general opposition to the individual mandate without any claimed personal injury, is insufficient to establish standing. *See United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."); *Melcher v. Fed. Open Mkt. Comm.*, 836 F.2d 561, 564 (D.C. Cir. 1987), *cert. denied*, 486 U.S. 1042 (1988) ("Courts are not at liberty to embark upon a broad, undifferentiated mission of vindicating constitutional rights; after all, Article III specifically limits the judicial power of the United States to the resolution of actual cases or controversies.").

The Court next turns to Plaintiff's claim that he is harmed by the religious exemption because the exemption favors one religion over another and allows the government to certify that citizens are the "correct" religion. Defendants argue that Plaintiff has failed to state a concrete and particularized injury as it relates to the religious exemption. Defs.' MTD at 8. Defendants point to the fact that Plaintiff does not claim that he is a member of a group that should be included in the exemption, only that the religious exemption should be declared unconstitutional. *Id.* Based on the fact that Plaintiff does not allege that he should be exempt from the individual

13

mandate based on his religious beliefs, Defendants claim "Plaintiff's true 'injury' is simply that he disagrees with the minimum coverage provision and would prefer to be exempt." *Id.* In response, Plaintiff claims that the religious exemption "regulate[s] and track[s] a person's religion, and . . . favor[s] one religion over another," and, as result, everyone is harmed. Compl. ¶ 1; Pl.'s Resp. 3. Plaintiff further alleges that "[t]he Commerce Clause gives Congress no authority to mandate a change of religion or punish inactivity, alone." Compl. ¶ 33.

Plaintiff is non-observant in his religion and does not assert that a religious exemption should be extended to him. *See* Compl. ¶ 5. Rather, Plaintiff explains "that he should not be forced to change his religion or religious designation to avoid penalties specified by a law that keeps changing by decree." *Id.* ¶ 25. The allegation that Plaintiff is being "forced" to change his religion is not supported in any other way. Instead, Plaintiff's argument is as follows: there is an exemption to the individual mandate for certain religious groups, he is not a member of any of those groups, and, therefore, he is not able to claim that exemption. It follows that Plaintiff's challenge to the religious exemption solely is based on the general existence of the exemption and not on the exemption's specific application to him.

The Supreme Court has denied citizens and taxpayers standing to raise a generalized grievance about the conduct of government. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216-23, 222 n.11 (1974) (quoting *Sierra Club v. Morton*, 405 U.S. 727 (1972) ("We have expressed apprehension about claims of standing based on 'mere interest in a problem.'"). In the instant matter, Plaintiff bases his challenge to the religious exemption on the fact that such exemptions harm everyone by their mere existence and not that the exemption personally harms him. *See* Pl.'s Resp. 3. However, "an asserted right to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal

court." *Allen v. Wright*, 468 U.S. 737, 754 (1984). In regards to the religious exemption, Plaintiff has asserted no more than a general claim that Congress has violated the Commerce Clause and the First Amendment. He has asserted no personal stake in the outcome of the controversy as it relates to the religious exemption, or direct injury in order to establish standing. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (noting that the determination of standing is especially important when parties assert an injury that is not distinct from one suffered equally by all taxpayers and citizens); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006) (explaining that a taxpayer must demonstrate a direct injury in order to establish standing).

Defendants also argue that Plaintiff has failed to establish that his alleged injury is traceable to the religious exemption and that the alleged injury can be redressed by declaring the religious exemption invalid. Defs.' MTD at 9-10. Indeed, "'[t]he desire to obtain [sweeping relief] cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks.'" *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974) (quoting *McCabe v. Atchison, T. & S. F. R. Co.*, 235 U.S. 151, 164 (1914)). Plaintiff does not seek to have the religious exemption altered to include him, but rather seeks to have the exemption declared as invalid. The Court agrees that the existence of the religious exemption is not traceable to Plaintiff's injury because his real injury is a general grievance with the individual mandate. Further, even if the Court were to find that religious exemption violated the exercise of Congress' Commerce Power in violation of the First Amendment, Plaintiff would be in the same position. He would be subject to the individual mandate and would be required to either obtain health insurance coverage or pay the penalty. The only difference would be that no

15

one else could claim a religious exemption. Accordingly, Plaintiff's injury, the fact that he is subject to the individual mandate, is not redressed by declaring the religious exemption invalid. Plaintiff seems to imply that if the Court were to declare the religious exemption unconstitutional that it would follow that the Court would have to declare the individual mandate and the entire Act invalid. Compl. ¶ 20-21. Plaintiff has provided no rationale for why this would be the case and the Court does not adopt this view. Accordingly, the Court concludes that Plaintiff has failed to establish that he has standing to bring the instant action and Defendants' Motion to Dismiss shall be granted.

### B. Establishment Clause Claim

The Court generally would not address Defendants' contention that Plaintiff failed to state a viable Establishment Clause claim given the Court's finding that Plaintiff does not have standing to bring the instant action. *See Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361-62 (D.C. Cir. 2012) (noting that standing is a required "predicate to any exercise of [the court's] jurisdiction"). However, given the evolution of the taxpayer standing doctrine, *see Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 604 (2007), and in an abundance of caution, the Court shall address Plaintiff's claim that the religious exemption to the individual mandate violates the Establishment Clause by giving preference to one religion over another and allowing the government to certify that members of certain religions are exempt from the individual mandate.[5] Compl. ¶¶ 1, 30, 32, 33; Pl.'s Resp. Br. ¶ 1. Defendants argue that Plaintiff failed to make any sort of factual assertions to establish the necessary elements of an Establishment Clause claim. Defs.' MTD at 11.

---

[5] The Court shall not address the merits of Plaintiff's other claims because of its finding that Plaintiff does not have standing.

In regards to the Religion Clauses of the First Amendment, the Court has long recognized that there are some actions that are "permitted by the Establishment Clause but not required by the Free Exercise Clause." *Locke v. Davey*, 540 U.S. 712, 718 (2004) (noting that there "is room for play in the joints" of the two clauses). In an Establishment Clause challenge, "the initial inquiry is whether the law facially differentiates among religions." *Chaplaincy of Full Gospel Churches v. United States Navy*, 738 F.3d 425, 430 (D.C. Cir. 2013), *petition for cert. filed*, --- U.S.L.W. --- (May 23, 2014) (No. 13-1419) (citing *Larson v. Valente*, 456 U.S. 228 (1982)). If the law is facially neutral, the court applies the three-part test from *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *Chaplaincy of Full Gospel Churches*, 738 F.3d at 430. The Affordable Care Act provides a "religious conscience" exemption[6] and a "health care sharing ministry" exemption[7] to the individual mandate. The application of the *Lemon* test is appropriate to the religious exemption because neither provision makes "explicit and deliberate distinctions" between different religions or sects.

---

[6] This provision provides an exemption for: "a member of a recognized religious sect or division thereof which is described in section 1402(g)(1)"; or "an adherent of established tenets or teachings of such sect or division as described in such section." 26 U.S.C. § 5000A(d)(2)(A). 26 U.S.C. § 1402(g)(1) codifies the religious conscience exemption of the Social Security Amendments of 1965.

[7] This exemption excludes members of a health care sharing ministry, meaning an organization:
    (I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),
    (II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,
    (III) members of which retain membership even after they develop a medical condition,
    (IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and
    (V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request.
26 U.S.C. § 5000A(d)(2)(B). 26 U.S.C. § 501 provides tax exemptions for certain organizations.

The *Lemon* test provides that a law must: "(1) have a secular legislative purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) not result in excessive entanglement with religion or religious institutions." *Chaplaincy of Full Gospel Churches*, 738 F.3d at 430 (quoting *Bonham v. D.C. Library Admin.*, 989 F.2d 1242, 1244 (D.C. Cir. 1993)). The constitutionality of the religious exemption recently was addressed by the U.S. Court of Appeals for the Fourth Circuit in *Liberty University, Inc. v. Lew*, 733 F.3d 72 (4th Cir. 2013), *cert. denied*, --- U.S. ---, 134 S. Ct. 683 (2013), and is instructive in this matter. In *Liberty University*, the Fourth Circuit held both provisions of the religious exemption passed muster under the *Lemon* test. First, the court found that the religious exemption has a secular legislative purpose: "'to ensure that all persons are provided for, either by the [Act's insurance] system or by their church." *Id.* at 101-02. Second, the court found that the religious exemption had the principal or primary effect of ensuring that all individuals were covered, rather than advancing or inhibiting religion. *Id.* at 102. Finally, the court found that there was no excessive entanglement with religion. *Id.* Here, the Court adopts the reasoning of the Fourth Circuit in noting that Plaintiff failed to state an Establishment Clause claim upon which relief can be granted.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [9] Motion to Dismiss, DENIES Plaintiff's [12] Motion for Partial Summary Judgment, and DENIES Plaintiff's [18]

---

[8] The Court further notes that the religious conscience exemption of the Act incorporates the same provision of the Social Security Amendments of 1965. 26 U.S.C. §§ 1402(g)(1) & 5000A(d)(2)(A). Courts have consistently upheld this provision. *Droz v. Comm'r*, 48 F.3d 1120, 1124-25 (9th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996); *Hatcher v. Comm'r*, 688 F.2d 82, 84 (10th Cir. 1979) (*per curiam*); *Jaggard v. Comm'r*, 582 F.2d 1189, 1189-90 (8th Cir. 1978) (per curiam), *cert. denied*, 440 U.S. 913 (1979).

Renewed Motion for Partial Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

Dated: June 25, 2014

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge